Filed 12/24/20  P. v. Saravia CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LUCIO ANTONIO SARAVIA,<br><br>    Defendant and Appellant. | D076047<br><br><br><br>(Super. Ct. Nos. JCF000871<br>& JCF001425) |


APPEAL from orders of the Superior Court of Imperial County, William D. Quan, Judge.  Affirmed.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Elizabeth M. Kuchar, Deputy Attorneys General, for Plaintiff and Respondent.

While he was on probation in two separate cases, defendant Lucio Saravia was arrested and charged with carrying a concealed dirk or dagger (Pen. Code, § 21310)[1] and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). At a combined preliminary hearing and probation-revocation hearing, the deputy who arrested Saravia testified that at the time of the arrest Saravia had a pointy-tipped machete concealed in his pants, and he was holding a bindle containing a rock-like substance that, based on the deputy's training and experience, he believed was methamphetamine. Based on this testimony, the trial court held Saravia to answer on the current charges, and revoked his probation on the grounds he violated conditions prohibiting him from possessing dangerous weapons and unprescribed drugs, and requiring him to obey all laws. The court sentenced Saravia to concurrent two-year terms on the underlying probation cases, and imposed a $300 probation-revocation fine (§ 12022.44) in each case.[2]

Saravia challenges the trial court's orders revoking probation (his current charges are not at issue in this appeal). As to the machete, Saravia contends insufficient evidence supports the trial court's finding that it constituted a dirk, dagger, or dangerous weapon, and further contends the court violated his constitutional rights by limiting his cross-examination of the deputy about potential innocent uses for the machete. As to the methamphetamine, Saravia challenges the sufficiency of the evidence

---

[1]  Undesignated statutory reference are to the Penal Code.

[2]  The Attorney General moved to dismiss this appeal as moot because Saravia has completed his sentence. As we explain in Discussion part I, however, the appeal is not moot because effective relief is available as to the probation-revocation fines.

supporting the court's finding that the rock-like substance was, in fact, methamphetamine.

For reasons we will explain, we conclude Saravia's contentions lack merit. Accordingly, we affirm the orders revoking his probation.

## FACTUAL AND PROCEDURAL BACKGROUND

### Saravia's Probation Cases

#### *The Assault Case (JCF000871)*

In May 2018, Saravia brandished a BB gun while on a transit bus and placed the gun against a passenger's head. Saravia pulled the trigger, but the gun did not fire. Saravia was charged with multiple offenses, and ultimately pleaded no contest to aggravated assault. (§ 245, subd. (a)(4).)

The probation officer's report revealed that Saravia was already on probation for a recent trespass offense, during which he possessed brass knuckles and a crowbar. Saravia admitted to his probation officer that "he uses methamphetamine and has used the drug since he was nineteen years old." Saravia told the probation officer he lived with his employer, for whom he performed seasonal field labor.

After reading and considering the probation officer's report, the trial court (Judge William Quan) placed Saravia on three years' formal probation, subject to conditions requiring that he (among other things): (1) "Not possess any firearms or dangerous weapons" (weapons condition); (2) "Abstain from the possession or use of any drugs, narcotics, or other illicit substances not specifically prescribed for him by a licensed physician" (drug condition); (3) "Obey all laws" (lawfulness condition); and (4) report to the probation department within 48 hours of his release from custody (reporting condition). The court also imposed a conditional $300 probation-revocation fine. (§ 1202.44.)

***The Fire Case (JCF001452)***

In September 2018, about two months after he was placed on probation in the Assault Case, Saravia was arrested for, and charged with, arson of an inhabited structure. (§ 451, subd. (b).) Saravia ultimately pleaded no contest to recklessly causing a fire of a structure or forest land. (§ 452, subd. (c).) He also admitted that his conduct in the Fire Case violated the conditions of his probation in the Assault Case.

The trial court (Judge Poli Flores) revoked and reinstated Saravia's probation in the Assault Case, and placed him on three years' formal probation in the Fire Case subject to the same conditions noted above, plus the additional condition that he register as an arson offender (registration condition). The court also imposed a conditional $300 probation-revocation fine. (§ 1202.44.)

## Saravia's New Offenses

One morning in May 2019, about six months after Saravia was placed on probation in the Fire Case, a sheriff's deputy was dispatched to a call about a man at a bus stop attempting to conceal a knife in his pants. The deputy responded to the bus stop and located a man, later determined to be Saravia, who matched the description provided by the dispatcher.

The deputy patted down Saravia and discovered a machete concealed in Saravia's pants. In the process of handcuffing Saravia, the deputy found in Saravia's fist a bindle containing a rock-like substance the deputy believed was methamphetamine.

Saravia was arrested and charged with carrying a concealed dirk or dagger (§ 21310) and possession of methamphetamine (Health & Saf. Code, § 11377).

4

## Probation-Revocation Proceedings

The day after Saravia's arrest, the probation department filed petitions to revoke his probation in the Assault and Fire Cases. The petitions alleged Saravia violated the weapons, drug, lawfulness, reporting, and registration conditions (the latter two of which are not at issue in this appeal). The petitions stated the "circumstances of the[se] alleged violation[s] are" that Saravia "violated Penal Code section 21310 . . . and Health and Safety Code section 11377(a) . . . ."

The trial court (Judge Quan, who presided over the Assault Case) held a combined hearing on the probation-revocation petitions and the preliminary hearing on Saravia's new charges. The sheriff's deputy who arrested Saravia on the current charges testified at the hearing.

### *Deputy's Testimony*

Aaron Curiel testified he had been a deputy with the Imperial County Sheriff's Department for about six months, and a reserve deputy for about three years.

On May 15, 2019, at about 9:42 a.m., Curiel was dispatched on a call regarding a man at a bus stop attempting to conceal a large knife in his pants. When Curiel arrived at the scene, he observed a man (later determined to be Saravia) who matched the description of the suspect provided by dispatch, sitting on a concrete slab next to a bus stop, playing with rocks and talking to himself.

Curiel approached Saravia and asked him to stand. Saravia complied. The deputy did not see any weapons, nor did he see Saravia attempt to conceal anything. Curiel directed Saravia to turn around, at which point Saravia reached into his pocket and pulled something out. The deputy grabbed Saravia's hands and patted him down, revealing a hard object on

5

Saravia's left hip. Curiel did not immediately know what the object was, so he asked Saravia in broken Spanish "if he had a '*filero*' on him and [Saravia] said, '*Si, senor*.'" The parties stipulated to the court interpreter's translation that "filero" is slang in Spanish for "any kind of bladed weapon."

Curiel handcuffed Saravia and removed from inside Saravia's pants and boxers an object Curiel immediately recognized as a machete. Curiel recognized the object based on his personal experience (he had seen machetes in movies, and his grandfather had one) and training he received at the police academy regarding dangerous weapons. The trial court did not allow the prosecutor to further explore Curiel's knowledge about whether a machete "could cause great bodily injury [or] that it's a stabbing weapon" because a photograph of the machete was admitted as an exhibit.

Curiel removed the machete from Saravia's pants "really slowly"— taking about five or 10 seconds—so he "didn't nick . . . or cut" Saravia. Curiel noticed that Saravia's "baggy" "pants had holes in them to where when he was . . . putting his knife in, it looked like [it] had been cutting his pants when taken in and out."

Curiel described the machete as being about 21 inches long, with a 17-inch blade and a four-inch handle. The tip of the machete "was kind of rounded and then the rounded part met a straight part, creating a tip" that "has a point to it." Although the machete seemed "fairly older," it appeared its blade had been recently sharpened, and Curiel found a file on the ground near where Saravia had been sitting.

Saravia's counsel cross-examined Curiel about various innocent uses for machetes. When asked if he was aware of people using "a machete like an axe by swinging it up and down or side to side in front of them," Curiel responded, "If they want to use it that way, but you can use a machete any

way you choose." Curiel acknowledged he was aware of people using machetes "for chopping wood."

When asked if he was aware there was "a lot of agriculture" work in Imperial County, Curiel responded, "yes." The court sustained the prosecutor's belated relevance objection, but did not strike the answer. When defense counsel later asked Curiel if he was "aware of someone using a machete in agriculture," the trial court sustained the prosecutor's relevance objection. Defense counsel argued the question "go[es] to the innocent purpose of this object, the charge of bringing a dirk or dagger." The court responded that the prosecution does not "have to prove the defendant used or intended to use the weapon at all." Defense counsel initially offered to rephrase his question, but then indicated he had no further questions about the machete.

Returning to the circumstances of Saravia's arrest, Curiel testified that when he handcuffed Saravia, Curiel "noticed he had a bindle in his left hand and he wouldn't open his fist." Curiel took the object and examined it. Curiel described the bindle as a square piece of a beer can folded around four individually folded dollar bills. In the last dollar bill, Curiel "found a small clear baggie containing a single," white rock-like object.

Based on his training and experience, which included an approximately 40-hour course on drug identification, Curiel testified the rock-like object "appeared to be" and he "believed it was" methamphetamine. He based this conclusion "on the totality of the circumstances," including the object's appearance, color, texture, and packaging. Curiel determined the object weighed .26 grams, which he opined was a usable amount.

Curiel performed a field presumptive test on the substance, but the trial court did not allow him to reveal the results. Curiel sent the substance to the crime lab for formal testing, but was unaware of the results.

On cross-examination, Curiel acknowledged his training did not allow him to identify the chemical composition of a substance simply by looking at it. He also acknowledged there are other substances—some legal, some illegal—that resemble methamphetamine.

*Argument*

Saravia's counsel argued there was insufficient evidence to hold Saravia to answer on the current charges because "[a] dagger is synonymous and consists of any straight stabbing weapon primarily for stabbing," and there "was no testimony that this . . . machete . . . was primarily fitted or designed for stabbing." Instead, the evidence showed that "sometimes this type of machete is used in a swinging motion."

Similarly, defense counsel argued there was no evidence on which to revoke Saravia's probation based on his possession of the machete. Counsel argued there was no evidence Saravia "failed to obey all laws"; and there was no evidence he possessed a dangerous weapon because "machetes have lots of innocent purposes, and we heard testimony that Imperial County is an agricultural community."

Regarding drug possession, defense counsel argued there was insufficient evidence to bind over Saravia or to revoke his probation because there was no chemical analysis of the substance he possessed, merely a deputy's testimony about its appearance.

The prosecutor addressed both the preliminary hearing and probation revocation standards in a single argument. He asserted the machete "clearly . . . was a stabbing instrument" because Curiel testified "it could be

8

used in a multitude of ways, slashing or stabbing." As for the drug-possession charge, the prosecutor argued Curiel's testimony regarding the totality of circumstances based on "his expertise, his training and experience," was sufficient.

### Ruling

The trial court began its ruling by addressing the nature of the machete. The court stated that although it "underst[oo]d the argument of the stabbing weapon" and that "a machete can be used for many legal . . . things," the inquiry under section 21310 is whether the object "[c]an . . . be readily used as a stabbing weapon." The court found this inquiry was satisfied by Curiel's testimony that the machete "came to . . . a tip or a point."

The court then delivered its rulings on the preliminary hearing and the petitions to revoke probation.

For the preliminary hearing, the court noted "the standard of proof is a strong suspicion that the offense occurred." Without further analysis, the court found this standard was satisfied as to both the weapon- and drug-possession charges.

For the revocation petitions, the court "note[d] that the standard of proof . . . is a preponderance of the evidence." Starting with the petition in the Assault Case, the court found the prosecution had shown "by a preponderance of the evidence" that Saravia violated the weapons condition. The court then found Saravia also violated the drug condition. The court stated its findings "would also necessitate, then, a finding" by a preponderance of the evidence that Saravia violated the lawfulness condition.

Turning to the petition in the Fire Case, the court concluded that its "previous findings in the [Assault Case] . . . necessitate the finding also, by a

9

preponderance of the evidence," that Saravia violated the weapons, drug, and lawfulness conditions.

## Sentencing

After revoking Saravia's probation, the trial court conducted a sentencing hearing on the underlying convictions in the Assault and Fire Cases. Defense counsel "ask[ed] the Court to consider reinstating [Saravia] on probation" because "[h]is position is . . . he had the machete because he's a field worker." Alternatively, counsel requested that the court impose concurrent two-year terms, and refrain from imposing monetary assessments on the ground Saravia "is indigent, . . . doesn't have any assets, [and] . . . he does field work."

The prosecutor argued for a longer term "due to the nature of . . . the underlying arson and the underlying assault," and because the current charges that led to Saravia's revocation involved weapons and drugs.

The trial court sentenced Saravia to concurrent two-year prison terms, and credited him with certain custody and conduct credits. The court declined to impose certain monetary assessments on the grounds Saravia had "no present ability to pay them." But the court expressly stated it was imposing a $300 probation-revocation fine in each case under section 1202.44.

## DISCUSSION

### I. Motion to Dismiss as Moot

The Attorney General has moved to dismiss this appeal as moot on the grounds Saravia has completed his custodial sentence and, thus, our " 'ruling can have no practical effect or cannot provide the parties with effective relief.' " (*People v. Rish* (2008) 163 Cal.App.4th 1370, 1380.) The Attorney General supports its motion with a request that we take judicial notice of an April 3, 2020 "Court Commitments" report by the California Department of

10

Corrections and Rehabilitation, which purportedly shows Saravia was discharged from custody on August 15, 2019 after serving his sentences in the Assault and Fire Cases.

Saravia contends his appeal is not moot because the Court Commitments report does not establish whether he is still subject to some form of post-release supervision, and, in any event, because we can grant effective relief as to the probation-revocation fines. Alternatively, Saravia requests that we exercise our discretion to hear his appeal for a variety of policy reasons.

Saravia has the better of the arguments.

The United States and California Supreme Courts have held that an appeal is generally moot once a criminal defendant has completed his or her custodial sentence—*unless* the defendant can identify some additional concrete injury to be remedied in the appeal. (See *Spencer v. Kemna* (1998) 523 U.S. 1, 7 ["Once the convict's sentence has expired, . . . some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained."]; *People v. DeLeon* (2017) 3 Cal.5th 640, 646, fn. 2 ["We do not foreclose the possibility that . . . a defendant could demonstrate sufficiently concrete consequences to avoid a finding of mootness, even if the term of imprisonment has already concluded."].)

Even assuming Saravia completed his custodial sentence and is not subject to any form of supervision, the $600 in probation-revocation fines imposed on him presents a sufficiently concrete injury to preclude a finding of mootness. Accordingly, we deny the Attorney General's motion to dismiss, and deny as unnecessary the accompanying request for judicial notice of the Court Commitments report.

11

## II. Revocation of Probation

Saravia contends the trial court erred by revoking his probation. As to the machete-based violations, he contends insufficient evidence supports the trial court's finding that it constituted a dirk, dagger, or dangerous weapon, and further contends the court violated his constitutional rights by limiting his cross-examination of Deputy Curiel about potential innocent uses for the machete. As to the methamphetamine-based violations, Saravia challenges the sufficiency of the evidence supporting the court's finding that the rock-like substance was, in fact, methamphetamine. Under the standards that govern probation-revocation proceedings, we find no error.

### A. **Probation-Revocation Standards**

A court is authorized to revoke probation "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of their supervision . . . ." (§ 1203.2, subd. (a).) "The standard of proof in a probation revocation proceeding is proof by a preponderance of the evidence. [Citations.]" (*People v. Urke* (2011) 197 Cal.App.4th 766, 772 (*Urke*).) This " 'simply requires the trier of fact "to believe that the existence of a fact is more probable than its nonexistence." ' " (*In re Angelia P.* (1981) 28 Cal.3d 908, 918; see CALCRIM No. 375 ["more likely than not"].)

"We review a probation revocation decision pursuant to the substantial evidence standard of review [citation], and great deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court. [Citations.]' [Citation.] 'The discretion of the court . . . will not be disturbed in the absence of a showing of

12

abusive or arbitrary action. [Citations.]' [Citation.] 'Many times circumstances not warranting a conviction may fully justify a court in revoking probation granted on a prior offense. [Citation.]' [Citation.]" (*Urke*, *supra*, 197 Cal.App.4th at p. 773.)

" 'When considering a challenge to the sufficiency of the evidence . . . , we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

### B. **Revocation Based on Possessing the Machete**

We begin by addressing the scope of the trial court's ruling regarding the machete. Saravia contends the court found that his possession of the machete violated the weapons condition (i.e., that the machete was a "dangerous weapon"), but not the lawfulness condition (i.e., that he violated section 21310 by carrying a concealed dirk or dagger). Thus, he maintains we can affirm the revocation orders only if we find the machete constituted a "dangerous weapon" analogous to a "deadly weapon" in the aggravated assault context, which would require us to find either that the machete is inherently deadly as a matter of law, or that Saravia intended to use it as a

13

weapon and not for innocent purposes.  We do not read the trial court's ruling so narrowly.

The trial court began its ruling by finding *generally* that the machete met the definition of a dirk or dagger because it could "be readily used as a stabbing weapon."  The court then found probable cause existed to believe that Saravia violated section 21310, and that the preponderance of the evidence showed he violated the weapons condition.  The fact the court made the weapons-condition-violation finding *without further explanation* indicates the court based this finding on the only explanation the court had offered thus far—that Saravia carried a concealed machete in violation of section 21310.

In light of this construction, we need only address the trial court's underlying finding that Saravia's possession of the machete violated the lawfulness condition (by violating section 21310).  We need not also engage in Saravia's proposed analysis regarding whether the machete constituted a "dangerous weapon" under aggravated assault principles.

Having so construed the trial court's ruling, we find it is supported by substantial evidence.

Section 21310 proscribes carrying concealed a "dirk or dagger."  Section 16470, in turn, defines a dirk or dagger (in pertinent part) as "a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death."  Section 21310 "does not require that the defendant intend to use the concealed dirk or dagger as a stabbing instrument." (*People v. Mitchell* (2012) 209 Cal.App.4th 1364, 1372 (*Mitchell*); see *People v. Rubalcava* (2000) 23 Cal.4th 322, 331 (*Rubalcava*).)  It requires only that the defendant " 'knowingly and

14

intentionally carry concealed upon his or her person an instrument "that is capable of ready use as a stabbing weapon." ' " (*Mitchell*, at p. 1372.)

The Legislature intentionally defined "dirk or dagger" broadly. The first legislative definition required that the instrument be "*primarily designed, constructed, or altered to be a stabbing instrument.*" (*People v. Bermudez* (2020) 45 Cal.App.5th 358, 366-367 (*Bermudez*); see *People v. Castillolopez* (2016) 63 Cal.4th 322, 328.) But when "[t]his definition proved overly narrow," the Legislature amended it by "replacing 'primarily designed, constructed, or altered to be a stabbing instrument' with '*capable of ready use as a stabbing weapon.*' [Citations.] '[T]he Legislature recognized that the new definition may criminalize the "innocent" carrying of legal instruments . . . , but concluded "there is no need to carry such items concealed in public." ' [Citation.]" (*Bermudez*, at p. 367.) The definition's broad sweep is tempered by allowing a defendant to justify the possession of an instrument "ordinarily usable for peaceful purposes," and to defend its concealment as "accidental/unintentional." (*Mitchell*, *supra*, 209 Cal.App.4th at pp. 1371, 1381.)

Ultimately, the question "[w]hether a knife is a dirk or dagger is a question of fact for the [trier of fact] to determine." (*People v. Belloso* (2019) 42 Cal.App.5th 647, 653, review granted March 11, 2020, S59755.)

Substantial evidence supports the trial court's determination that Saravia knowingly carried a concealed machete that was readily capable of being used as a stabbing weapon that may cause great bodily injury—that is, as a dirk or dagger. There is no real dispute that Saravia knowingly carried a concealed a machete on his person. As Deputy Curiel testified, the machete was not visible until removed from inside Saravia's pants and boxers, and

15

Saravia knew it was there because he admitted as much when he told Curiel "he had a *filero* on him."

The real dispute is whether Saravia knew the machete was readily capable of being used as a stabbing weapon. Substantial evidence supports the trial court's finding that he did. Curiel testified that the machete had a sharpened blade that came to a *tip* or a *point*. A photograph of the machete was admitted as an exhibit at the hearing and is in the appellate record. We have viewed the photograph, and it substantiates Curiel's description. Thus, substantial evidence supports the trial court's factual finding that the machete was capable of being used as a stabbing weapon.

As for being *readily* capable, Curiel testified the machete was tucked inside Saravia's waistband. Once Curiel located the object, he was able to remove it in a matter of seconds. Saravia emphasizes that because it took *five to 10 seconds* for *Curiel* to remove the machete, it must not have been *readily* accessible to *Saravia.* We are not persuaded. Curiel explained he removed the machete "really slowly" to keep from nicking or cutting Saravia. It is reasonable to infer that Saravia, as the person who concealed the machete in his own pants, would have been able to remove it more quickly than a stranger who was unfamiliar with exactly how the machete was concealed and secured. Thus, substantial evidence supports the trial court's finding that the machete was readily accessible *to Saravia* for use as a stabbing weapon.

As noted, the prosecutor was not required to establish that Saravia intended to use the machete as a stabbing weapon; rather, it was incumbent on Saravia to establish he had an innocent use for it. (See *Mitchell, supra,*

16

209 Cal.App.4th at p. 1372; *Rubalcava, supra*, 23 Cal.4th at p. 331.)[3] Saravia contends the trial court violated his constitutional rights by precluding him from establishing such an innocent use. Specifically, he maintains the court erred by precluding defense counsel from cross-examining Curiel about agricultural uses for machetes in Imperial County. We see no error.

"[O]nly evidentiary error amounting to a complete preclusion of a defense violates a defendant's federal constitutional right to present a defense." (*People v. Bacon* (2010) 50 Cal.4th 1082, 1104, fn. 4.) The trial court did not completely preclude Saravia from presenting a defense regarding innocent use. To the contrary, defense counsel established about as much *through Curiel* as possible regarding *Saravia's* claimed innocent uses.

For example, defense counsel established that Curiel had heard of people using machetes to chop wood and in a swinging (as opposed to stabbing) motion. Curiel also testified he was from Imperial County and was aware of its agricultural character. Although the trial court sustained the prosecutor's objection on this topic, the court did not strike Curiel's answer. Moreover, defense counsel argued in closing that "machetes have lots of innocent purposes, and we heard testimony that Imperial County is an agricultural community."

At a more fundamental level, Saravia's argument implies that the trial court precluded him from establishing through Curiel that Saravia actually

---

3 Saravia's reliance on *People v. Baugh* (2018) 20 Cal.App.5th 438 to support the proposition that the prosecutor bore the burden of proving Saravia possessed the machete as a weapon is misplaced. "[T]he Legislature has treated dirks and daggers differently from" the weapons addressed by the statute at issue in *Baugh*. (*People v. Fannin* (2001) 91 Cal.App.4th 1399, 1405.)

possessed the machete for agricultural field work. But Saravia does not explain how Curiel would have known this about him. And, in any event, the trial court already knew from the probation officer's report in the Assault Case (over which the same judge presided) that Saravia was a seasonal field laborer. This would have allowed the court to conclude Saravia possessed the machete for innocent purposes—had the court been so inclined.

But the record contains ample evidence to support a finding that Saravia possessed the machete *as a weapon*. First, Saravia confirmed to Curiel he had a "filero" on him, which the parties stipulated was a "bladed *weapon*." (Italics added.) Second, applying the Legislature's rationale, if Saravia truly possessed the machete for innocent agricultural work, and if machete-use were truly prevalent for such work in Imperial County, then Saravia would have had " ' "no need to carry such [an] item[] *concealed* in public." ' " (*Bermudez*, *supra*, 45 Cal.App.5th at p. 367, italics added.) Yet, Saravia concealed the machete not just on this occasion, but did so routinely (as evidenced by the holes in his pants from repeatedly inserting and removing the machete).

In sum, under the applicable deferential review standard, we conclude substantial evidence supports the trial court's finding that Saravia's possession of the concealed machete violated both the weapons and lawfulness conditions.

C. **Revocation Based on Possessing Methamphetamine**

Saravia also challenges the sufficiency of the evidence supporting the trial court's finding that he possessed methamphetamine, in violation of the drug and lawfulness conditions. Substantial evidence supports the trial court's finding.

18

Deputy Curiel testified he received specialized training in the identification of controlled substances. Based on that training, Curiel testified the rock-like object he recovered from Saravia's possession "appeared to be" and he "believed it was" methamphetamine. The circumstances Curiel identified in reaching this conclusion included the object's appearance, color, texture, and packaging (a plastic baggie nested inside a folded dollar bill, nested inside of a folded piece of beer can). Although Curiel acknowledged some legal substances may resemble methamphetamine, his bottom-line belief that the substance "was" methamphetamine supports the trial court's finding.

The cases Saravia cites to support a contrary conclusion are legally and factually distinguishable. (See *People v. Davis* (2013) 57 Cal.4th 353 (*Davis*); *People v. Mooring* (2017) 15 Cal.App.5th 928 (*Mooring*); *People v. McChristian* (1966) 245 Cal.App.2d 891 (*McChristian*).) *Davis* and *Mooring* are legally distinguishable because they involved *convictions* that required proof *beyond a reasonable doubt*. (See *Davis*, at p. 357; *Mooring*, at p. 943.) Similarly, although the *McChristian* court purported to review the sufficiency of the evidence under the lower standard applicable to motions to dismiss under section 995, the court uncritically adopted the rationale from a case reviewing a conviction under the reasonable doubt standard. (*McChristian*, *supra*, 245 Cal.App.2d at pp. 896-897, citing *Cook v. U.S.* (9th Cir. 1966) 362 F.2d 548, 549.) The reasonable doubt standard requires that the trier of fact " ' "be reasonably persuaded to a near certainty." ' " (*People v. Redmond* (1969) 71 Cal.2d 745, 756.)

By contrast, to revoke Saravia's probation, the trial court needed to find only that it was "more likely than not" (CALCRIM No. 375) that the substance was methamphetamine. The trained deputy's testimony met this

19

burden.  (See *Harris v. Asuncion* (9th Cir. 2019) 752 Fed.Appx. 528, 529 [finding no habeas corpus violation where probation was revoked based on testimony of a police officer "who had seen methamphetamine multiple times during his career" and "stated that the substance [in the probationer's possession] looked like methamphetamine"].)

Factually, *Davis* and *Mooring* undermine Saravia's claim because the police witnesses in those cases competently established without chemical testing that certain substances were what the officers asserted they were. (*Davis, supra,* 57 Cal.4th at pp. 358-359 [involving MDMA]; *Mooring, supra,* 15 Cal.App.5th at pp. 945-946 [involving Vicodin].)  The officers' testimonies were inadequate in those cases only because neither of the identified substances was on the state's schedule of controlled substances; thus, additional evidence was required to establish the substances were "analogs" of scheduled substances.  (*Ibid.*)

There are no similar concerns here.  Indeed, the *Davis* court observed that methamphetamine is on the state's list of controlled substances (*Davis, supra,* 57 Cal.4th at p. 358), and thus "is a controlled substance as a matter of law, and the jury need not make any further finding in that regard" (*id.* at p. 361, fn. 5).  And the *Mooring* court recognized that "the illegal nature of a controlled substance . . . 'may be proved by circumstantial evidence,' " including " 'by the expert opinion of the arresting officer.' "  (*Mooring, supra,* 15 Cal.App.5th at p. 943.)  This is precisely the type of evidence the trial court relied on here.

*McChristian* is also factually distinguishable because the prosecution's entire case was based on police officers' testimony that they had seen small balloons in the fleeing defendant's mouth and, in *most* of the cases in which they had arrested someone with similar balloons, those balloons contained

20

heroin. (*McChristian*, *supra*, 245 Cal.App.2d at p. 895.) The court held the officers' testimony about "the outward appearance of the balloons[] was speculative and conjectural" about whether those balloons actually contained heroin. (*Id.* at p. 897.)

*McChristian* would be persuasive had Curiel testified only about his experience with bindles like the one he recovered from Saravia. But his testimony was not so limited. To the contrary, he also testified about the contents of the bindle—a rock-like substance he believed was methamphetamine. There was no similar testimony in *McChristian*.

In sum, Curiel's testimony, based on his training and experience, was sufficient to establish it was more likely than not that the rock-like substance he recovered from Saravia's possession was, in fact, methamphetamine. Accordingly, substantial evidence supports the trial court's findings that Saravia violated the drug and lawfulness conditions.

## DISPOSITION

The orders are affirmed.

HALLER, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

21