Filed 4/27/21  P. v. Dillard CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MELTON ZEEDORE DILLARD, <br><br> Defendant and Appellant. | F079142 <br><br> (Super. Ct. No. F18904897) <br><br> **OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan M. Skiles, Judge.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Jennifer Oleksa, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Melton Zeedore Dillard appeals his conviction for robbery.  We affirm.

---

* Before Franson, Acting P.J., Smith, J. and Snauffer, J.

## BACKGROUND

**Charges**

The Fresno County District Attorney charged Dillard with committing three crimes: Robbery (Pen. Code,[1] § 211; count 1), felony assault (§ 245, subd. (a)(4); count 2), and resisting a peace officer (§ 148, subd. (a)(1); count 3). It was further alleged Dillard had suffered two prior strike convictions (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)).[2]

**Trial Evidence**

The incident occurred at a mall in Fresno and was captured on surveillance video. The video shows the victim entering the mall with four other people including Dillard. In total, the five individuals spend more than 30 minutes together in and around the mall.[3]

The victim testified he went to the mall to buy shoes and had approximately $200 in cash in his wallet. While walking through the mall parking lot, he showed the four others his wallet, the cash inside it, and told them it was $200. Specifically, he showed them five 20 dollar bills, and one 100 dollar bill. "[A] few minutes" later he "remember[s] hitting the curb [and] flying over the curb." He heard "one person telling them to stop." His phone and wallet were taken.

Dillard testified he saw a fight break out between the victim and one of the other people. He tried to stop the fight by saying, "Stop. Chill. Relax." He "was pushing people trying to stop [the fight] and let [the victim] up" but acknowledged these actions

---

[1] All statutory references are to the Penal Code.

[2] The charges included allegations the same prior convictions qualified as enhancements pursuant to sections 667, subdivision (a), and 667.5, subdivision (b). The court ultimately dismissed these enhancements when it pronounced judgment.

[3] The timeframe is based on the video surveillance timestamps.

2.

were not visible on the video.[4]  He denied any role in or knowledge of the theft and admitted to once kicking the victim's head.

The video depicts the five individuals walking through the parking lot away from the mall.  At one point, the victim displays a small object in his hand to the group including Dillard.  Nearly five minutes later the victim is seen falling forward to the ground near a curb.  Dillard is the first person to reach the victim as the victim attempts to stand up.  While the victim is lying on the ground, he is punched multiple times by an "Asian" male and a "black" male as Dillard holds the victim's left foot.[5]

A few seconds later, Dillard is near the victim's head, while the Asian male places his hands near the victim's waist.  Then, as the victim is still on the ground, Dillard kneels near the victim's upper torso and the two assailants are at the victim's feet.  Dillard ends up near the victim's left side, stands up, steps to his right, and kicks the victim in the head.  The black male leans down toward the victim one final time.  The fourth person does not engage in any physical contact with the victim.

The Asian male walks away from the victim while clutching something black in his right hand.  Dillard trots behind the Asian male.  The Asian male looks down into his hands as Dillard is directly beside him; the group then runs through the parking lot, leaving the victim behind.

Local law enforcement responded to the scene.  One officer testified he encountered four possible suspects nearby.  Two suspects including the black male fled on foot while Dillard and the Asian male did not flee.  At that time, the officer was unsure whether Dillard and the Asian male were involved in the incident.

---

[4] The first visible part of the actual incident is when the victim is falling forward to the ground.  The several seconds before that are obscured by a large tree.  Dillard testified his actions to stop the fight occurred behind the tree.

[5] Asian male and black male are the descriptions used throughout the record; the two males are not otherwise identified.

3.

The black male was quickly detained. Two 20 dollar bills were discovered on his person. Law enforcement soon realized Dillard and the Asian male were also involved.

Dillard subsequently fled but was quickly detained. He gave a brief statement in which he denied "laying hands" on the victim.

The Asian male also fled and he too was detained. On his person were a black wallet, a bus pass, and a 20 dollar bill.

The victim identified the wallet and bus pass as his property. Those items, along with the three recovered 20 dollar bills were returned to him.[6]

**Verdict and Sentence**

Dillard was convicted as charged. He was sentenced to serve 25 years to life in prison pursuant to the Three Strikes law.[7]

## DISCUSSION

Dillard contends the People insufficiently proved robbery. Specifically, he argues "there is no substantial evidence that the assault was for the purpose of stealing [the victim's] property [or that he] took the wallet, knew anyone else intended to take the wallet, or intended for any of the others to take or retain [the victim's] property before, during or after the assault."[8] We disagree.

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27 (*Lindberg*).) "We presume in support of the judgment the existence of every fact the

---

[6] The fourth person was never detained or identified.

[7] A separate 25-years-to-life sentence was imposed and stayed on Count 2.

[8] Dillard was tried for robbery as both a direct perpetrator and an aider and abettor.

4.

trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*Ibid*.)

" 'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.)

"A conviction of robbery requires evidence showing that the defendant conceived the intent to steal either before or during the commission of the act of force against the victim."[9] (*People v. Jackson* (2016) 1 Cal.5th 269, 343.) "To prove that a defendant is an [aider and abettor] the prosecution must show that the defendant acted 'with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' " (*People v. Gomez* (2018) 6 Cal.5th 243, 279.) " 'When the offense charged is a specific intent crime, the accomplice must "share the specific intent of the perpetrator"; this occurs when the accomplice "knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." ' " (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118.) " 'Among the factors which may be considered in making the determination of aiding and

---

[9] The remaining elements of robbery are not at issue in this case.

5.

abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense' " including flight. (*In re Gary F. (*2014) 226 Cal.App.4th 1076, 1080.)

The evidence in this case readily supports the robbery conviction. The parties in this case spent more than 30 minutes together without incident. Within five minutes of the victim displaying his wallet, he was assaulted and robbed. The proceeds from the robbery were quickly dispersed between at least the Asian male and black male. The fact the profits were hastily divided reasonably suggests a preconceived, even if spontaneous, plan to rob the victim.

Indeed, the video depicts a coordinated robbery. Dillard rushes to the victim and holds him down while the Asian male immediately tries to empty the victim's pockets. Dillard then deliberately kicks the victim's head in an effort to maintain control and ensure the crime is completed. After completing the crime, Dillard and the Asian admire the loot by rifling through the stolen wallet. The entire group then flees the crime scene in unison, and then later each attempts to individually run from law enforcement.

These are facts reasonably inferred from the evidence and not speculation as suggested by Dillard. (See *People v. Davis* (2013) 57 Cal.4th 353, 360 [" '[a] reasonable inference … "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work." ' "].) We must presume the jury drew each reasonable inference supporting the verdict. (*Lindberg, supra,* 45 Cal.4th at p. 27.) These inferences sufficiently prove Dillard intended to assist the others in committing a robbery including the requisite intent to steal. This is true even if he did not share in the profits.[10] Accordingly, we find the evidence sufficient to prove robbery.

---

[10] Dillard also argues the fact the victim heard someone say "stop" during the assault undermines a planned robbery. In our view, that fact does not disprove intent, even if Dillard was the speaker. There are many reasons a person engaged in a group crime might tell his or her confederates to "stop." For example, a person might shout "stop" to limit the injuries to a victim, to notify the crime is complete, or to serve as a signal to escape.

## **DISPOSITION**

The judgment is affirmed.