Filed 6/10/24  P. v. Thomas CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079946 |
| v. | (Super.Ct.No. FVI17002966) |
| MELINDA KAY THOMAS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Debra Harris, Judge.  Affirmed.

Jeffrey Manning-Cartwright and Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, and Arlyn Escalante, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.  INTRODUCTION

In 2018, defendant and appellant Melinda Kay Thomas was convicted of one count of attempted criminal threats (Pen. Code,[1] §§ 644, 422, subd. (a); count 1); two counts of possession of a firearm by a prohibited person (§ 29800, subd. (a)(1); counts 2, 3) and one count of possession of ammunition by a prohibited person (§ 30305, subd. (a)(1); count 4).  In 2022, defendant petitioned to vacate her convictions pursuant to newly enacted section 236.15, which generally permits the trial court to vacate a conviction upon a showing that the conviction was the direct result of being a victim of intimate partner violence or sexual violence.  (§ 236.15, subd. (a).)

Defendant appeals from the denial of her petition, arguing:  (1) the trial court's factual findings are not supported by substantial evidence; (2) the trial court erred by utilizing incorrect evidentiary and legal standards beyond those specified in section 236.15; and (3) the matter should be remanded for full reconsideration of her petition in light of amendments made to section 236.15 during the pendency of her appeal.  We conclude:  (1) substantial evidence supports the trial court's factual findings; (2) the record does not affirmatively demonstrate the trial court misapplied section 236.15; and (3) any error based upon the failure to apply the current version of section 236.15 was harmless.  Accordingly, we affirm the order.

---

[1] Undesignated statutory references are to the Penal Code.

## II.  BACKGROUND

A. *Facts*

Defendant was convicted of one count of attempted criminal threats (§§ 644, 422, subd. (a); count 1); two counts of possession of a firearm by a prohibited person (§ 29800, subd. (a)(1); counts 2, 3) and one count of possession of ammunition by a prohibited person (§ 3035, subd. (a)(1); count 4).  The convictions arose from an incident on September 19, 2017, in which defendant allegedly sent several text and voice messages threatening to shoot A.M.; texted photographs of two firearms to A.M.; and was observed in possession of firearms and ammunition while driving toward A.M.'s residence.  Defendant was eventually sentenced to a term of 13 years four months in state prison.[2]  Beginning in January 2022, defendant filed multiple petitions for relief seeking to vacate her convictions pursuant to newly enacted section 236.15.  On September 30, 2022, the trial court held an evidentiary hearing on defendant's petition.

---

[2]  On direct appeal, this court modified defendant's original sentence and remanded the matter for resentencing.  Upon remand, the trial court resentenced defendant to a term of 13 years 4 months in state prison, representing:  (1) six years on count 2, representing the upper term, doubled as the result of a prior strike offense; (2) eight months on count 1, representing one-third the middle term; (3) one year and four months on count 3, representing one-third the middle term, doubled as the result of a prior strike offense; and (4) a five-year enhancement pursuant to section 667, subdivision (a)(1).  The trial court imposed the upper term of three years on count 4 but stayed execution pursuant to section 654.

B. *Relevant Evidence Submitted on Petition*

    1.  Written Statements[3]

    In her written statements to the trial court, defendant stated that she and A.M. began a romantic relationship sometime in 2016; the two began cohabitating in 2017; and A.M. began to physically abuse defendant during this time. As a result of this alleged abuse, A.M. moved out of their shared home in July 2017. According to defendant, the two became involved in an altercation on September 8, 2017, in which A.M. allegedly physically assaulted defendant. Following this incident, defendant sought a restraining order against A.M. Defendant stated that, had she not suffered from this abuse, "the events of September 19, 2017 would have never happened."

    In her declarations, defendant also claimed to have "suffered a lifetime of mental and mood related disorders [that] stem[med] from being raped, molested, and abused as a child"; to have been a victim of childhood sexual trauma; and to have had "a long history of mental and mood related disorders." In one declaration, defendant stated that she was acting erratically on the evening of September 19, 2017 because A.M. had stollen the medication defendant used to treat her bipolar disorder.

    2.  Police Report

    Defendant submitted a police report dated November 2, 2017. According to the

---

    **3** Defendant filed a total of four petitions pursuant to section 236.15 before the trial court set the matter for a hearing. Each petition was accompanied by its own written statement. However, we summarize all of the relevant facts taken from these written statements together.

report, the deputy had responded to a call on September 8, at defendant's residence. When the deputy arrived, she encountered defendant and A.M., both of whom stated that they were only arguing, denied any physical altercation, and agreed that there was no risk of escalation. The deputy did not witness any visible injuries on either party, and the deputies left the scene.

On November 2, 2017, defendant called the deputy claiming that A.M. had subsequently physically assaulted defendant on the night of September 8, after deputies left the scene. The deputy met with defendant and took a statement. During this interview, the deputy did not observe any injuries on defendant "due to the report being taken several weeks after the incident." However, defendant provided photographs of injuries allegedly sustained during the incident, which were attached to the report.

The deputy proceeded to conduct a personal interview with A.M. A.M. denied any physical altercation on the evening of September 8, 2017. Instead, A.M. disclosed that defendant had threatened to shoot him on September 19, and that defendant was arrested as a result of that incident. He expressed the belief that A.M. fabricated her report of an assault as retaliation for her arrest on September 19.

3. Testimony of J.W. and R.C.

Defendant called two witnesses to testify in support of her petition. Both witnesses testified they had known defendant for years. They both testified to witnessing defendant with visible signs of physical injury during the time she was in a relationship with A.M. However, one witness admitted that he had never personally witnessed how defendant received any of her injuries. The other testified that he had personally seen

5

A.M. forcefully grab defendant's arm on one occasion but formed his own assumptions regarding the causes of defendant's other injuries.

### 4. Defendant's testimony

Defendant also testified in support of her petition. She reaffirmed the facts set forth in her written statement that she began a romantic relationship with A.M. in 2016; the two began living together in 2017; A.M. physically abused her while they were living together; and A.M. moved out in July 2017. She recounted several incidents in which A.M. purportedly physically abused her, causing physical injuries. Defendant testified that she obtained a restraining order against A.M. in November 2017 as the result of this physical abuse. With respect to the events of September 19, resulting in her convictions, defendant testified that the firearms she was in possession of at the time belonged to A.M.; A.M. had called her the day prior to request that she return his belongings; and she was only attempting to comply with A.M.'s request. When asked why she would agree to this request, defendant stated her rationale was "To see [A.M.], I guess," and "I guess as an excuse to go see [A.M.]."

Defendant contradicted the claim in her written statement that she was acting erratically because A.M. had stollen her medication. Instead, defendant testified that she was attempting to see A.M. on the evening of September 19, 2017, because she believed A.M. was attempting to take medications in order to commit suicide or otherwise inflict self-harm.

When asked why defendant would message A.M. with a photograph of firearms as well as send messages with threatening comments, the only explanation defendant

6

offered was that "[t]here w[ere] comments back and forth between both of us," and that she had sent threatening messages out of anger.

Defendant admitted she had been diagnosed with several mental health disorders, including bipolar, PTSD, and attention deficit disorder. Defendant also admitted that A.M.'s testimony at the time of her trial, if believed, could support the conclusion that defendant was the individual in their relationship who manipulated A.M., and not the other way around.

## C. *Ruling and Order*

The trial court denied defendant's petition for vacatur of her convictions. The trial court found that defendant had established by clear and convincing evidence that defendant was a victim of physical abuse. However, the trial court found that the evidence presented failed to show that the commission of the offense was caused by defendant's status as a victim of prior abuse.

The trial court provided a statement of reasons on the record, explaining: "[T]his is my understanding, that [defendant]'s position is that, based on her domestic abuse, she was in some type of cycle of abuse, and that led her to commit the offense. Problem number 1, she is denying that she made a threat. Problem number 2, . . . [t]here's no expert testimony. There is nothing to inform this Court that this cycle of abuse is that you are separated from the abuser. [¶] You are still caught in this cycle to where you indeed would like to go back and start the relationship, and you make irrational decisions because of the abuse. . . . [A]nd her way of getting back together was a threat, a gun, a cry for help, or whatever. I didn't hear that. [¶] [W]hat I heard was a denial that she did

7

not commit the [offense] at all.  Not that [the offense] was committed based on the intimate partner violence.  And I find that the burden has not been met, and I'm going to deny the petition."

## III.  DISCUSSION

A.  *Legal Background*

In 2021, the Legislature enacted section 236.15, which became effective January 1, 2022.  (Stats. 2021, ch. 695, § 1.)  As originally enacted, subdivision (a) of the statute provided:  "If a person was arrested for or convicted of any nonviolent offense committed while the person was a victim of intimate partner violence or sexual violence, the person may petition the court for vacatur relief of their convictions and arrests . . . .  The petitioner shall establish, by clear and convincing evidence, that the arrest or conviction was the direct result of being a victim of intimate partner violence or sexual violence."  (*Ibid.*)  Subdivision (g) of the statute provided:  "After considering the totality of the evidence presented, the court may vacate the conviction and expunge the arrests and issue an order if it finds all of the following:  [¶] (1) That the petitioner was a victim of intimate partner violence or sexual violence at the time the nonviolent offense was committed[;] [¶] (2) The commission of the crime was a direct result of being a victim of intimate partner violence or sexual violence[;] [¶] (3) The victim is engaged in a good faith effort to distance themselves from the perpetrator of the harm[;] [¶] (4) It is in the best interest of the petitioner and in the interests of justice."  (*Ibid.*)

In 2022, the Legislature amended section 236.15, which became effective January 1, 2023.  (Stats. 2022, ch. 776, § 2.)  As relevant to this appeal, subdivision (a)

8

was amended to state that: "The petitioner shall establish, by clear and convincing evidence, that the arrest or conviction was the direct result of being a victim of intimate partner violence . . . which demonstrates that the person lacked the requisite intent to commit the offense. Upon this showing, the court shall find that the person lacked the requisite intent to commit the offense and shall therefore vacate the conviction as invalid due to legal defect at the time of the arrest or conviction." (*Ibid.*) Subdivision (g) was amended to remove the requirement that the trial court find the victim is engaged in a good faith effort to distance themselves from the perpetrator of the harm, and the requirement that the court find relief is in the best interest of the petitioner. (*Ibid.*)

B. *Standard of Review*

As the People correctly observe, there are no published decisions setting forth the applicable standard of review on an appeal from denial of a motion to vacate under section 236.15. However, we agree with the People that the abuse of discretion standard is the appropriate standard of review for this specific appeal. Notably, the version of section 236.15 in effect at the time of the hearing on defendant's petition provided that the trial court "may" grant relief after making specific factual findings. (Former § 236.15, subd. (g); Stats. 2021, ch. 695, § 1.) Additionally, one of the findings necessary to obtain relief is that vacatur be in the interests of justice. (*Ibid.*) Such language clearly indicates that the decision whether to grant relief under the statute was intended to be discretionary. (See *People v. Anderson* (2023) 88 Cal.App.5th 233, 239 [Language stating that relief is conditioned on a court's finding that it is "in the interest of justice" suggests the trial court exercises discretion in its decision.]; *People v. Perez*

9

(2021) 67 Cal.App.5th 1008, 1014 [" 'It is a well-settled principle of statutory construction that the word "may" is ordinarily construed as permissive, whereas "shall" is ordinarily construed as mandatory . . . .' "].) As such, it is appropriate for this court to review the trial court's order for abuse of discretion.

We briefly observe that the abuse of discretion standard may no longer be appropriate for petitions denied under the current version of the statute. (Stats. 2023, ch. 131, § 149.) The Legislature created considerable ambiguity on this point when it amended section 236.15 during the pendency of this appeal to add language in subdivision (a) to provide that, upon a showing that a conviction was the direct result of intimate partner violence, the trial court "shall" find that the person lacked the requisite intent to commit the offense and "shall" vacate the conviction. (§ 236.15, subd. (a).) This language now suggests relief may be mandatory and is analogous to the language used in section 1473.7, addressing petitions to vacate convictions on other grounds (§ 1473.7, subd. (e)), which the California Supreme Court has instructed should be subject to independent review (*People v. Vivar* (2021) 11 Cal.5th 510, 527). To add to the ambiguity, the Legislature left intact the provisions in subdivision (g) providing that the trial court find that relief is in the interests of justice before it "may" grant a petition under section 236.15. (§ 236.15, subd. (g); Stats. 2023, ch. 131, § 149.)

Ultimately, we need not resolve the ambiguity introduced to the statutory scheme by the Legislature in this appeal. Defendant's petition in this case proceeded under the former section 236.15, which clearly provided that the decision to grant relief was a matter of the trial court's discretion. Thus, the abuse of discretion standard is the

10

appropriate standard of review on appeal from this discretionary order. However, "[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.) In this case, the trial court denied defendant's petition after determining that she failed to meet her burden of proof to establish that her conviction was the direct result of being a victim of intimate partner violence. This aspect of the trial court's discretionary ruling is reviewed for substantial evidence. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298 [When a statute requires a trial court to "sit as the trier of fact," we "review the trial judge's factfinding for substantial evidence."].)

Further, "[t]he substantial evidence standard of review takes on a unique formulation where, as here, 'the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals.' [Citation.] '[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.' [Citation.] Specifically, we ask 'whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*In re S.G.* (2021) 71 Cal.App.5th 654, 671; see *In re R.V.* (2015) 61 Cal.4th 181, 201 [In the context of a criminal competency hearing where the

11

prosecution has no obligation to present affirmative evidence, "the inquiry on appeal is whether the weight and character of the evidence . . . was such that the . . . court could not reasonably reject it."].) Thus, in reviewing the trial court's factual finding for substantial evidence, we apply this modified standard of review.[4]

B. *The Trial Court's Factual Finding Is Supported by Substantial Evidence*

Applying the modified standard of review, we conclude substantial evidence supports the trial court's finding that defendant failed to meet her burden of proof to establish that her convictions were the direct result of being a victim of intimate partner violence.

First, defendant's evidence was not uncontradicted or unimpeached. Defendant claimed in her written statements that A.M. stole her bipolar medication, which caused her to irrationally seek to find him on the evening of September 19, 2017. However, defendant made no mention of this claim in her live testimony. Further, defendant gave multiple, differing reasons for why she sought out A.M. on the evening of September

---

[4] Ultimately, because the trial court in this case also received live testimony from multiple witnesses, our review on appeal would be substantively the same even if we applied the independent standard of review articulated in *Vivar*. Even when subject to independent review, the Court of Appeal defers to the trial court's factual findings that are based upon personal observation of witnesses and evaluation of witness credibility. (*Vivar*, *supra*, 11 Cal.5th at pp. 527-528 [Under an independent standard of review, "appellate courts should . . . give particular deference to factual findings based on the trial court's personal observations of witnesses."]; *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1133 ["We independently review the order denying the motion to vacate" [under section 1473.7], but we "defer to the trial court's factual determinations if supported by substantial evidence . . . ."].)

12

19—first claiming that she was responding to a request by A.M. to return his possessions; then claiming that she was just seeking an excuse to see A.M.; and finally claiming that she was attempting to seek out A.M. to dissuade him from committing suicide or inflicting self-harm. Defendant claimed in her written statements that the entire incident on September 19, was a set up and that A.M. manipulated defendant into committing the offenses. However, defendant also admitted in her live testimony that evidence presented at the time of her trial could support the conclusion that she was the individual manipulating A.M. in their relationship. Thus, the evidence regarding defendant's motives for committing the offenses for which she was convicted was conflicting, potentially presenting multiple scenarios in which her motives would not have been clearly connected with being a victim of intimate partner violence.

Second, the evidence presented at the hearing was not of such weight and character as to compel a finding that defendant's possession of a firearm and criminal threats were the direct result of suffering intimate partner abuse. Defendant concedes on appeal that she failed to provide a coherent explanation for why she committed the offenses for which she was convicted, but she argues that incoherent statements are "the sort of statements abused people make to explain actions that, considered apart from the abuse, seem inexplicable." However, as the trial court correctly observed, there was no evidence, expert or otherwise, from which the trial court could infer that defendant's

13

statements were typical of persons suffering from intimate partner abuse.[5]

Even if it would have been reasonable for the trial court to infer that being the victim of intimate partner violence could have induced defendant to engage in erratic or irrational behavior, this was far from the only inference that could have been drawn based upon the evidence presented. Notably, defendant presented evidence that she suffered from numerous other mental health issues unrelated to her status as a victim of intimate partner violence at the time she committed her offenses, including the fact she was the subject of physical abuse as a child, sexually abused as a child, suffered from bipolar disorder, and suffered from adult attention deficit disorder. Thus, absent any other evidence, it would have been equally reasonable for the trial court to infer that defendant's behavior could have been caused by any of these various mental health issues. And while we are sympathetic to defendant's condition, section 236.15 authorizes

---

[5] The phrase "intimate partner violence" is the now preferred terminology for what was once commonly referred to as "battered women's syndrome." (See *In re Walker* (2007) 147 Cal.App.4th 533, 536, fn. 1 ["Although often referred to as 'battered women's syndrome,' 'intimate partner battering and its effects' is the more accurate and now preferred term."].) Our Supreme Court has repeatedly recognized that the reactions of an individual suffering from intimate partner violence are often subject to popular misconceptions and beyond the common knowledge. (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1087-1088 [Expert testimony is admissible because it would help counter " ' "popular misconceptions about battered women." ' "]; *People v. Brown* (2004) 33 Cal.4th 892, 905 [The behavior of victims of domestic violence is sufficiently beyond common experience to permit admission of expert testimony on the subject.].) Where a fact is not a matter of common knowledge, it would be inappropriate for the trial court or this court to accept that fact in the absence of evidence. (*People v. Davis* (2013) 57 Cal.4th 353, 360-361 [A court cannot take judicial notice of additional facts that were not proved at trial if the missing facts cannot be deemed a matter of common knowledge.].)

relief only when a conviction was the direct result of intimate partner violence or sexual violence, not the victim of mental health or mood disorders generally. Thus, the evidence was not of such character that it would compel the conclusion that any irrational behavior by defendant was directly caused by being a victim of intimate partner violence.

Given this record, the trial court was entitled to weigh the credibility of defendant as a witness and make factual findings in light of its credibility determinations. Under the modified substantial evidence standard applicable to a party who bears the burden of proof in the trial court proceeding, reversal is not warranted where the evidence is conflicting and does not compel a finding in defendant's favor.

C. *The Record Does Not Suggest the Trial Court Misunderstood the Law*

Defendant also suggests that the trial court erred by reading an expert testimony requirement into the statute or, alternatively, by claiming that defendant needed to admit her crimes as a prerequisite for relief. We conclude the record does not support defendant's assertions.

"A trial court abuses its discretion when . . . its decision is based on an incorrect legal standard." (*People v. Thai* (2023) 90 Cal.App.5th 427, 433; *In re M.W.* (2018) 26 Cal.App.5th 921, 931 ["[A] court abuses its discretion when it misinterprets or misapplies the law."].) The People concede, and we agree, that section 236.15 does not require expert testimony in order to establish that a conviction was the direct result of intimate partner violence. We also agree with defendant that the statute does not require her to explicitly admit she committed the underlying offenses resulting in her conviction. However, " '[e]rror on appeal must be affirmatively shown by the record, and "[w]e

15

presume the trial court knew and properly applied the law absent evidence to the contrary." ' " (*People v. Johnson & Johnson* (2022) 77 Cal.App.5th 295, 322; *People v. Fuhrman* (1997) 16 Cal.4th 930, 944 ["[T]he general rule" is "that a trial court is presumed to have applied the law correctly in the absence of a clear indication to the contrary . . . ."].) Thus, we will not presume the trial court misinterpreted or misapplied the law absent an affirmative indication in the record.

Here, defendant directs our attention to isolated comments by the trial court in order to suggest that the record affirmatively establishes the trial court misunderstood or misapplied the law. We are unpersuaded by defendant's characterization. Instead, we view the entire context of the trial court's stated reasons. (See *People v. Williams* (1997) 16 Cal.4th 153, 281-282 [Rejecting defendant's claim that trial court failed to follow the law "[b]ased solely on" an isolated remark and instead explaining that the trial court's "full remarks" must be considered.].)

Thus, while the trial court explicitly referenced defendant's failure to present expert testimony, it followed that comment by also stating that there was "nothing to inform this [c]ourt" regarding defendant's theory of a connection between her convictions and being a victim of intimate partner violence. In context, the trial court's comments suggest that it considered expert testimony as one type of evidence that might have been persuasive on the issue but that, ultimately, it did not find any evidence at all to support defendant's position. More specifically, the trial court never expressed a view that the causal connection between the crime and intimate partner violence could only be shown by resort to expert testimony.

Likewise, we disagree with defendant's characterization that the trial court "repeatedly faulted [defendant] for failing to acknowledge guilt." Instead, in its actual statement of reasons, the trial court explained: "[W]hat I heard was a denial that [defendant] did not commit the [offense] at all. Not that the [offense] was committed based on the intimate partner violence." In our view, this was a correct statement of the law. The basis for relief under section 236.15 is a showing that the petitioner's conviction was the "direct result" of being a victim of intimate partner violence. Absent such a showing, the defendant cannot meet her burden of proof even if she presents new evidence to negate the elements of the underlying crime.[6,7] In context, the trial court's statement merely expressed its view that defendant directed her evidence and arguments towards the wrong issue, while ignoring the threshold showing required under the statute.

When considered in context, the trial court's comments on the record do not rise to

---

[6] To the extent petitioner believed that additional evidence might negate elements of the offenses for which she was convicted, the Penal Code provides other procedural mechanisms for seeking relief. (See § 1473, subd. (b) [person may seek relief via writ of habeas corpus based upon claims of false evidence introduced at trial, discovery of new evidence not previously presented or heard at trial, or a significant dispute regarding expert testimony].) However, a petition pursuant to section 236.15 is not an appropriate vehicle to make such a showing.

[7] Similarly, the trial court's reference to the fact that it "can't change the standard" must be viewed in context of all its comments at the hearing. As we have explained, the trial court correctly articulated that a necessary prerequisite for relief under section 236.15 is a showing that a conviction was the direct result of being a victim of intimate partner violence, regardless of whether other evidence presented might negate an underlying element of the offense. Having correctly articulated defendant's burden on this issue in stating its reasons on the record, we decline to interpret the trial court's reference to a "standard" as suggesting some other evidentiary burden.

17

the level of an affirmative showing that it misunderstood or misapplied the law. Absent such a showing, defendant has failed to establish an abuse of discretion, and reversal is not warranted on this ground.

D. *Remand for Reconsideration of the Petition Is Unwarranted*

Finally, we address defendant's claim that she is entitled to remand for full reconsideration of her petition in light of amendments made to section 236.15 while her appeal was pending. According to defendant, the amendments made to section 236.15 are ameliorative in nature and, as a result, should be retroactively applied pursuant to *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).[8] In response, the People argue that the amendments do not apply retroactively and, even if they did, any failure to apply the amended provisions of section 236.15 should be deemed harmless.

We need not definitively resolve the issue of retroactivity in this case. Even where a legislative amendment is deemed retroactive under *Estrada*, reversal and remand is not warranted where any alleged error is harmless. (See *People v. Lewis* (2023) 88 Cal.App.5th 1125, 1131-1138 [retroactive ameliorative amendments to §§ 1170 & 1170.1 subject to harmless error review], review granted May 17, 2023, S279147; *People v. Boukes* (2022) 83 Cal.App.5th 937, 948 [even if ameliorative amendments to section 1109 apply retroactively, remand unnecessary where any error would be harmless],

---

[8] Generally, *Estrada* "stand[s] for the proposition that (i) in the absence of a contrary indication of legislative intent, (ii) legislation that ameliorates punishment (iii) applies to all cases that are not yet final as of the legislation's effective date." (*People v. Esquivel* (2021) 11 Cal.5th 671, 675.)

18

review granted Dec. 14, 2022, S277103; *In re Hansen* (2014) 227 Cal.App.4th 906, 920-921 [retroactive application of judicial narrowing of second-degree-felony-murder rule subject to harmless error review].) In this case, the record is clear that any failure to apply the amended version of section 236.15 would be harmless under any standard.[9]

In this case, the trial court made a factual finding that defendant failed to meet her burden of proof to show that her convictions were the direct result of being the victim of intimate partner violence. The version of section 236.15 in effect at the time required the trial court to make such a factual finding as a prerequisite to granting discretionary relief. (Former § 236.15, subd. (g).) While language added to section 236.15 now suggests that relief may be mandatory instead of discretionary, the current version of the statute still requires the trial court to make this factual finding as a prerequisite to obtaining relief. (§ 236.15, subds. (a),(g).) Further, the amendments to section 236.15 did not change the burden of proof, admissibility of evidence, or the procedural rules applicable to a petitioner seeking to meet their evidentiary burden.[10] Thus, we fail to see how defendant

---

[9] Generally, errors under state law require reversal only if it is "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.) An error implicating federal constitutional law requires reversal unless the error can be deemed harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18.) Defendant does not suggest that federal law is implicated by any failure to apply the amended version of section 236.15. Indeed, defendant's reply brief and supplemental reply brief do not attempt to respond to the People's prejudice argument at all.

[10] While the amendments removed other factual findings necessary to obtain relief, the requirement that the trial court find the conviction was the direct result of being a victim of intimate partner violence remains unchanged. (§236.15, subds. (a),(g).) Nor could the removal of other necessary findings impact the trial court's ability to grant

19

could possibly obtain a different outcome even under the version of section 236.15 now in effect.

In light of the trial court's factual finding on a threshold issue necessary to obtain relief, the trial court could not have granted defendant's petition regardless of which version of the statute is applied to defendant's case.  Thus, under any applicable standard, the failure to apply the current version of section 236.15 must be deemed harmless because there is no possibility that defendant could have obtained a different result, even if the current version of section 236.15 had been in effect at the time of her hearing.

## IV.  DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS_____
J.

We concur:

MILLER_____
Acting P. J.

MENETREZ_____
J.

---

relief, as the necessary factual findings are not factors to be weighed.  Instead, the statute requires the trial court find "all of the following" enumerated facts before it can grant relief.  (§236.15, subd. (g).)

20