Filed 7/11/25  P. v. Martinez-Costa CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C101182 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F00180) |
| v. | Sacramento County |
| CLEO MARTINEZ-COSTA, | |
| Defendant and Appellant. | |

In 2011, defendant Cleo Martinez-Costa was involved in an attempted robbery during which her accomplice Lionel Doria shot and killed James Hiter.  A jury found Martinez-Costa guilty of first degree murder and attempted robbery and found true a special circumstance allegation that the murder was committed while she was engaged in an attempted robbery.  The trial court sentenced her to life in prison without the possibility of parole.

In 2019, Martinez-Costa filed a petition for resentencing under what is now Penal Code section 1172.6.[1]  The trial court denied the petition after considering the evidence from Martinez-Costa's trial.

---

[1]  Undesignated statutory references are to the Penal Code.

1

On appeal, Martinez-Costa contends substantial evidence does not support the trial court's finding that she was a major participant in the attempted robbery who acted with reckless indifference to human life. We disagree and affirm the order denying the petition for resentencing.

BACKGROUND

I

*Factual Background*

One evening in November 2011, a witness—referred to hereafter as Witness 1—went to Hiter's apartment to help him package methamphetamine for sale to various buyers. After Hiter told Witness 1 that he was going to deliver methamphetamine to his "ex," the two drove to Martinez-Costa's house, where Hiter parked his car on the road in front of the house. As Hiter walked to the trunk of his car, a masked man with a handgun ran toward him from the yard of Martinez-Costa's house. Witness 1 heard the masked man say, "[M]otherfucker, give me everything you got," followed by the sound of a gunshot. The masked man then moved to the porch area of Martinez-Costa's home, and Martinez-Costa asked Witness 1 to help her move Hiter's body. Witness 1 refused and drove away in Hiter's car.

The masked man was later identified as Doria. On the day of the shooting, Doria told his girlfriend that he intended to rob someone. During a phone call that day, his girlfriend recognized Martinez-Costa's voice on the other end as Doria discussed the movements of another man.

Another witness—referred to hereafter as Witness 2— had met Doria a few times at Martinez-Costa's house, behind which she lived in a trailer. Doria bragged to Witness 2 that he had robbed and shot people. Hiter sold drugs to Martinez-Costa at the house. After one such transaction, Martinez-Costa complained that Hiter sold her poor-quality drugs and stated that she wanted to rob him.

2

According to Witness 2, Martinez-Costa's son—who spent a significant amount of time at the house—did not want Doria around because he had learned of Doria's reputation for forming close relationships with victims before robbing and shooting them.

In the hours leading up to the shooting, Martinez-Costa made several phone calls and sent multiple text messages to both Hiter and Doria. On one occasion, immediately after calling Hiter, she sent a text message to Doria explaining that she had "jus[t] cal[led]," and he was "ma[y]b[e] . . . at home now." Two hours later, Martinez-Costa texted Doria, "He call to say he on the road il c u when I c him." Just minutes before the shooting, Martinez-Costa sent a text message to her neighbor that read, "Don't come over."

Within a couple of weeks of the November 2011 shooting, Martinez-Costa told police that Doria had the mentality of a child and was "fucking crazy." She also admitted that she previously dated Hiter.

II

*Procedural Background*

In 2014, a jury found Martinez-Costa and Doria guilty of the first degree murder of Hiter (§ 187, subd. (a)) and attempted robbery. The jury also found true as to both defendants the special circumstance allegation that the murder occurred during the attempted robbery. (§ 190.2, subd. (a)(17)(A).) In 2018, a different panel of this court affirmed the judgment and sentence of life without the possibility of parole. (*People v. Martinez-Costa et al.* (Jun. 13, 2018, C076567) [nonpub. opn.].)

In 2019, Martinez-Costa filed a petition for resentencing in the trial court under what is now section 1172.6, contending she could not presently be convicted of murder because of changes to sections 188 or 189 effective January 1, 2019. Ultimately, the trial court issued an order to show cause and the parties submitted briefing to the trial court, but none of the parties presented new evidence. The trial court considered the matter in light of the trial record, and in July 2024 denied the petition after finding beyond a

3

reasonable doubt that Martinez-Costa was "guilty of murder under multiple theories of liability," including being a major participant in the attempted robbery who displayed a reckless indifference to human life. Martinez-Costa appealed.

DISCUSSION

I

*Legal Background*

A.      *Changes to the Felony-murder Rule*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437) narrowed the felony-murder rule by amending section 189 to provide that a participant in the perpetration or attempted perpetration of specified felonies, including robbery, in which a death occurs is liable for murder only if (1) the person was the actual killer; (2) the person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer in committing first degree murder; or (3) *the person was a major participant in the underlying felony and acted with reckless indifference to human life*, as described in section 190.2, subdivision (d), the statute defining the felony-murder special circumstance. (Stats. 2018, ch. 1015, § 3; *People v. Curiel* (2023) 15 Cal.5th 433, 448.) Senate Bill No. 1437 also added what is now section 1172.6, creating a procedure for convicted murderers to seek relief if they cannot be convicted of murder under the law as amended. (Stats. 2018, ch. 1015, § 4; *Curiel*, at p. 449.) Section 1172.6, subdivision (a) provides, in relevant part, that a person convicted of felony murder may file a petition with the court for resentencing "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder . . . . [¶] (2) The petitioner was convicted of murder . . . following a trial . . . . [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."

4

Where, as here, the trial court issues an order to show cause and considers evidence, the prosecution bears the burden of proving beyond a reasonable doubt that the defendant is guilty of murder under California law as amended by Senate Bill No. 1437. (§ 1172.6, subd. (d)(3).) The parties may rely on evidence in the record of conviction or offer new or additional evidence at the hearing. (*Ibid.*) The trial court acts as an independent fact finder and determines whether the evidence establishes beyond a reasonable doubt that the defendant would be guilty of murder under the amended sections 188 and 189 and, therefore, ineligible for relief under section 1172.6. (*People v. Cody* (2023) 92 Cal.App.5th 87, 110.)

B.      *"Major Participant" and "Reckless Indifference to Human Life"*

When it amended section 189, Senate Bill No. 1437 incorporated the meaning of "major participant" and "reckless indifference to human life" elucidated in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). (See *People v. Strong* (2022) 13 Cal.5th 698, 710.) The California Supreme Court explained that the actus reus element—major participation in the crime—requires substantial personal involvement in the crime. (*Banks*, at pp. 798, 802.) Considering the totality of the circumstances, the trier of fact may consider the following factors in determining whether the defendant's participation in the crime was sufficiently significant to be considered major: (1) the defendant's role in planning the crime that led to the victim's death; (2) the defendant's role in supplying or using lethal weapons; (3) the defendant's awareness of particular dangers posed by the nature of the crime, weapons used or past experience or conduct of the other participants; (4) whether the defendant was present at the scene of the killing, in a position to facilitate or prevent the murder; (5) whether the defendant's conduct played a particular role in the death; and (6) the defendant's conduct after lethal force was used. (*Id*. at p. 803.) No one factor is necessary or necessarily sufficient. (*Ibid.*)

5

The mens rea element—reckless indifference to human life—contains subjective and objective components. (*In re Scoggins* (2020) 9 Cal.5th 667, 677.) "As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' [Citations.] As to the objective element, ' "[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." ' " (*Ibid.*) Participation in an armed robbery and awareness that armed robberies carry a risk of death is not enough. (*Id.* at p. 682; *Clark*, *supra*, 63 Cal.4th at pp. 617-618; *People v. Banks*, *supra*, 61 Cal.4th at pp. 805, 806-808.) The defendant must knowingly create a grave risk of death. (*In re Scoggins*, at p. 677; *Banks*, at p. 808.)

The California Supreme Court has identified the following factors a trier of fact may consider in determining, under the totality of the circumstances, whether the defendant acted with reckless indifference to human life: (1) whether the defendant used or knew that a gun would be used during the underlying felony; (2) how many weapons were used; (3) whether the defendant was physically present at the crime, indicating the defendant shared in the actions and mental state of the other participants; (4) whether the defendant had the opportunity to restrain the crime or aid the victim; (5) the duration of the interaction between the perpetrators of the crime and the victim; (6) the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force; and (7) the defendant's efforts to minimize the risks of violence during the underlying felony. (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677; *Clark*, *supra*, 63 Cal.4th at pp. 618-623.) As with the factors concerning major participation in the crime, no one factor is necessary or necessarily sufficient to establish the requisite mens rea. (*Clark*, at p. 618.)

6

C.    *Standard of Review*

Because the question whether Martinez-Costa was a major participant in the attempted robbery and acted with reckless indifference to human life involves questions of fact, we review the trial court's factual findings for substantial evidence. (*People v. Underwood* (2024) 99 Cal.App.5th 303, 314; *People v. Henley* (2022) 85 Cal.App.5th 1003, 1017. Our role on review is distinct from the trial court's role in deciding the petition in the first instance. (*People v. Davis* (2024) 107 Cal.App.5th 500, 509.) The trial judge must review the evidence, resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard. But our job is to determine whether there is substantial evidence, contradicted or uncontradicted, to support the trial court's findings beyond a reasonable doubt. (*Ibid.*) We do not reweigh the evidence or judge the credibility of witnesses but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (*People v. Cody*, *supra*, 92 Cal.App.5th at pp. 112-113.)

We must affirm unless sufficient substantial evidence does not support the finding under any hypothesis and we must accept any logical inferences the trial court drew from the circumstantial evidence. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established, but it may not be based on speculation. (*People v. Davis* (2013) 57 Cal.4th 353, 360.) It is sometimes difficult to identify the precise line between a reasonable inference and impermissible speculation.

II

*Analysis*

Martinez-Costa contends there is insufficient evidence to find that she was a major participant in the attempted robbery who acted with reckless indifference to human life. She contends the trial court "speculated that [she] was aware that Doria had a reputation for using firearms to rob and shoot people." We disagree. The trial court's findings were

7

based on substantial evidence, including reasonable inferences drawn from circumstantial evidence.

As the trial court reasoned, Martinez-Costa "played a crucial role in executing the plan to attempt to rob Hiter": she indicated to Witness 2 that she wanted to rob Hiter; she communicated with Doria regarding Hiter's movements in the hours and minutes leading up to the attempted robbery outside her home; and she lured Hiter to her home, where Doria was lying in wait to rob him. We agree with the trial court that her efforts "greatly improved the possibility that Doria would have the opportunity to attempt to rob Hiter." Accordingly, substantial evidence supports the finding that Martinez-Costa was a major participant in the attempted robbery that led to Hiter's murder.

Regarding reckless indifference to human life, we accept the trial court's reasonable inferences that Martinez-Costa was aware of Doria's reputation for using firearms to rob *and shoot* his victims. The court identified three inferences in reaching that conclusion: (1) Martinez-Costa's son—who spent significant time at her home— would likely have shared with her the reason he did not want Doria around, namely, that he had learned of Doria's reputation for robbing and shooting people; (2) if Doria was willing to share his history of shooting robbery victims with Witness 2, "someone who can be best described as an acquaintance," then it is reasonable to infer that Martinez-Costa, who had a closer relationship with Doria, would also have known of that history; and (3) Martinez-Costa's reference to Doria as "fucking crazy" was "an acknowledgment of his violent reputation." These reasonable inferences support the trial court's determination that Martinez-Costa "would have been acutely aware of the likelihood that Hiter would be shot" during the attempted robbery—supporting a finding of reckless indifference to human life.[2]

---

[2] In *People v. Emanuel* (2025) 17 Cal.5th 867, the trial court denied a petition for resentencing after finding the petitioner was a major participant in an armed robbery who

8

Having concluded that the trial court's felony-murder findings are supported by substantial evidence, we need not address the alternate theory of murder liability on which the trial court also relied in denying Martinez-Costa's petition.

DISPOSITION

The order denying Martinez-Costa's petition for resentencing is affirmed.

_____/s/_____
BOULWARE EURIE, J.

We concur:


_____/s/_____
ROBIE, Acting P.J.


_____/s/_____
WISEMAN, J.*

---

acted with reckless indifference to human life. Our Supreme Court reversed the appellate court's judgment that affirmed that denial, explaining in relevant part: "In sum, the evidence shows [the petitioner] set out to commit a robbery in a public place in the middle of the afternoon. He was not armed, and the trial court found *he did not know* [*his codefendant*] *was armed or likely to use lethal force*. Accordingly, there was nothing in the plan that 'elevated the risk to human life beyond those risks inherent in any armed robbery,' much less a planned unarmed robbery. (*Clark*, *supra*, 63 Cal.4th at p. 623.)" (*Emanuel*, at p. 895, italics added; see *id*. at p. 885 ["The *Clark* factors concerning use of or awareness of weapons and knowledge of a cohort's propensity for violence therefore do not weigh in favor of a finding of reckless indifference."].)

  Here, by contrast, there is substantial evidence for the trial court's finding that Martinez-Costa's was aware of Doria's reputation for using firearms to shoot his robbery victims.

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.