Filed 9/12/25  P. v. Mehriallahyari CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063387 |
| v. | (Super. Ct. No. 22HF0429) |
| MILAD MEHRIALLAHYARI, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Elizabeth G. Macias, Judge. Affirmed.

Elisa A. Brandes, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Britton B. Lacy and Namita Patel, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Milad Mehriallahyari guilty of, inter alia, four counts of second degree burglary. Mehriallahyari's only contention on appeal is his conviction for burglarizing a storage unit belonging to L.O. must be reversed because insufficient evidence showed he had ever entered that unit.

For the reasons we explain, substantial evidence shows Mehriallahyari entered L.O.'s storage unit with the intent to commit larceny within the meaning of Penal Code section 459.[1] We therefore affirm.

FACTS

I.

BURGLARIES AT EXTRA STORAGE INCLUDING THE BURGLARY OF L.O.'S STORAGE UNIT

The morning of October 23, 2022, a storage associate at Extra Storage in Irvine was walking the hallways of the facility, checking to see all units were properly locked, when she noticed the door of the storage unit belonging to K.H. appeared damaged. She notified the property manager who, after arriving at the storage facility, observed the door of that unit appeared to be "kicked in." The property manager also saw two bikes outside the unit.

The property manager reviewed the facility's activity log which showed K.H.'s unit had been opened at 7:02 a.m. and for about a minute thereafter was repeatedly closed and reopened. The property manager also reviewed video surveillance footage showing an individual the property manager identified as Mehriallahyari walking outside the facility between

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

6:00 a.m. and 7:00 a.m. earlier that morning. The property manager did not observe any subsequent footage picturing any other person.

Mehriallahyari rented a storage unit on the same second floor as K.H.'s storage unit, but on the opposite side of the facility. Notwithstanding Mehriallahyari's appearance on the video surveillance footage, the facility's activity log did not reflect any activity by Mehriallahyari at the facility on October 23, 2022, as Mehriallahyari's access had been blocked due to nonpayment of rent for his storage unit. The following day, however, Mehriallahyari's friend came into the office to make a payment for Mehriallahyari which restored Mehriallahyari's access to the facility and his storage unit.

During the morning of October 26, 2022, the property manager saw the lock had been cut on both a storage unit belonging to L.O. and a storage unit belonging to Y.W. Those two units "are right next to each other" and about three storage units away from K.H.'s unit along the same hallway. The property manager looked inside L.O.'s unit and saw "the tenant's belongings were kind of tossed everywhere"; boxes and bins were open and "[e]verything looked messed with." The property manager also opened Y.W.'s unit and saw it similarly appeared to have been "ransacked."

The activity log from that morning showed L.O.'s unit had been opened at 5:07 a.m. and then closed at 5:11 a.m.[2] The activity log did not reflect activity at Y.W.'s unit because its sensor was faulty. Mehriallahyari's activity log showed his unit was accessed at 3:31 a.m., closed at 5:40 a.m., and then opened again at 7:52 a.m.

---

[2] The facility's office hours were from 9:00 a.m. to 6:00 p.m. and tenants could access the facility from 7:00 a.m. to 7:00 p.m.

Video surveillance footage showed that at 2:06 a.m. the same morning, Mehriallahyari got out of a black truck stopped near the facility. At 2:48 a.m., footage showed Mehriallahyari pushing a large bicycle toward a stairwell of the facility. The facility's stairwells are for employee use only and require a physical key to enter unless the lock was picked or the door was left propped open.

Video surveillance footage showed that several hours later, at 7:38 a.m., a second person got out of the truck and handed Mehriallahyari a second bicycle. The footage further showed, after repeatedly attempting, unsuccessfully, to punch in his code to open the facility door, at 7:51 a.m., Mehriallahyari rode a bicycle out of view to the side of the facility where there is a stairwell. About 40 seconds later, a motion sensor camera activated on the second floor of the facility. The facility's activity log showed Mehriallahyari's storage unit was then opened at 7:52 a.m.

The following day, on October 27, 2022, K.H. came to the facility and reported a bike was missing from his unit. The assistant manager called police. Officer Jameson Roberts of the Irvine Police Department was dispatched to the facility and, pursuant to a warrant, searched Mehriallahyari's unit where he found two bikes, one of which not only matched the description of the bicycle K.H. reported missing, but had the same serial number as K.H.'s missing bike. The name "'Milad'" was written on the handlebars of the bike; Milad is Mehriallahyari's first name. An Irvine Police Department forensic specialist testified a palm print found on K.H.'s bicycle belonged to Mehriallahyari.

After learning a safe was missing from L.O.'s storage unit, the facility's assistant manager observed a safe inside Mehriallahyari's unit and took a picture of it on October 28, 2022.

On October 29, 2022, Y.W. came to the facility and entered her storage unit to find thousands of dollars of property missing, including jewelry; designer shoulder bags, wallets, and scarves; computers; furniture; an oven; and power tools. Some of the property missing from Y.W.'s storage unit was found in Mehriallahyari's storage unit and returned to Y.W.

## II.

### BURGLARY AT SMARTSTOP SELF STORAGE

About nine months earlier, on January 23, 2022, a storage unit at the SmartStop Self Storage facility in Rancho Mission Viejo was burglarized. Ninety percent of the unit's contents had been taken, including a chop saw, a leaf blower, a trailer hitch, an air compressor, and a ladder. The facility's activity log showed the unit, which belonged to R.C., was opened at 3:14 p.m. on January 22, 2022, when R.C. had been at the facility but, according to the log, did not lock again until about 24 hours later.

Video surveillance footage showed Mehriallahyari arriving at the facility at 2:43 p.m. on January 23, 2022, in a black SUV. Footage also showed him exiting the facility with, inter alia, an orange power tool, a black and white leaf blower, a triangular black hitch mount, a chop saw, a compressor, and a silver expandible ladder. Close to midnight later that day, a sheriff's deputy saw Mehriallahyari in the facility parking lot loading power tools into his vehicle.

The storage units Mehriallahyari rented at that facility were later found to contain a ladder, trailer hitch, and chop saw similar to those found missing from R.C.'s unit.

### PROCEDURAL HISTORY

Mehriallahyari was charged in a third amended information with: (1) four counts of second degree burglary (§§ 459 & 460, subd. (b);

5

counts 1, 5, 6 & 7);[3] (2) three counts of grand theft (§ 487, subd. (a); counts 2, 8 & 9); (3) possession for sale of a controlled substance (Health and Saf. Code, § 11378, count 3); and (4) sale/transportation for sale of a controlled substance (Health & Saf. Code, § 11379, subd. (a); count 4).

The jury found Mehriallahyari guilty of all four burglary counts and all three grand theft counts. The jury also found Mehriallahyari guilty of violating Health and Safety Code section 11377, as the lesser included offense of count 3, and not guilty on count 4.

In a bifurcated trial, the trial court found true Mehriallahyari had two prior serious felony convictions. (§ 667, subds. (d) & (e)(1); 1170.1, subds. (b) & (c)(1).) The court granted Mehriallahyari's motion to strike the prior serious felony convictions for sentencing purposes, pursuant to section 1385, subdivision (b), and imposed a total prison term of 48 months. Mehriallahyari appealed.

## DISCUSSION

### I.

### STANDARD OF REVIEW

"When the sufficiency of the evidence to support a conviction is challenged on appeal, we review the entire record in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value from which a trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] Our review must presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Zaragoza* (2016) 1 Cal.5th 21, 44.)

---

[3] Count 6 alleged Mehriallahyari burglarized L.O.'s unit.

6

"'[A] reasonable inference . . . "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence."'" (*People v. Davis* (2013) 57 Cal.4th 353, 360.) "'"'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.'"'" (*People v. Valdez* (2004) 32 Cal.4th 73, 104.) We do not reweigh evidence, reevaluate the credibility of a witness, or settle factual conflicts, because "these are functions reserved for the trier of fact." (*People v. Xiong* (2013) 215 Cal.App.4th 1259, 1268.)

II.

SUBSTANTIAL EVIDENCE SUPPORTS MEHRIALLAHYARI'S CONVICTION FOR THE BURGLARY OF L.O.'S STORAGE UNIT

A person who "enters any house . . . or other building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." (§ 459.) "Every burglary of an inhabited dwelling house . . . or the inhabited portion of any other building, is burglary of the first degree. [¶] . . . All other kinds of burglary are of the second degree." (§ 460, subds. (a)–(b).)

Mehriallahyari contends his conviction for burglarizing L.O.'s storage unit is not supported by substantial evidence because insufficient evidence shows he ever entered that unit. We conclude more than substantial evidence supports the reasonable inference Mehriallahyari entered L.O.'s storage unit on October 26, 2022. The record shows that morning, facility personnel found the locks on L.O.'s and Y.W.'s storage units to have been cut. An inspection of the interior of both units showed they each appeared to have

7

been ransacked. Inside L.O.'s unit specifically, boxes and bins in L.O.'s unit were open and "[e]verything looked messed with."

The record further shows several items that had been taken from Y.W.'s unit were later found in and recovered from Mehriallahyari's storage unit, including an oven, computer monitor, power tools, furniture, luggage, and a designer scarf. (See *People v. McFarland* (1962) 58 Cal.2d 748, 754 ["Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt"].)

Substantial evidence also shows Mehriallahyari was present at the facility in the very early morning hours of October 26, 2022. Although the facility is only open to tenants from 7:00 a.m. until 7:00 p.m., Mehriallahyari was observed outside the facility at 2:06 a.m., and was further shown pushing a bicycle toward one of the facility's stairwells at 2:48 a.m. The facility's activity log showed Mehriallahyari's unit was opened at 3:31 a.m. and remained open until 5:40 a.m. During which time, L.O.'s unit had been accessed as the activity log showed it was opened at 5:07 a.m.

Our record does not show what items, if any, had been taken from L.O.'s storage unit the morning of October 26, 2022; L.O. did not testify at trial.[4] But evidence a theft occurred is not required for a burglary conviction. (*People v. Ramirez* (2006) 39 Cal.4th 398, 464.) Here, given the state of L.O.'s ransacked storage unit, alongside Y.W.'s ransacked storage

---

[4] The facility's assistant manager testified she understood a safe was missing from L.O.'s storage unit and she later saw a safe inside of Mehriallahyari's storage unit.

unit from which items were missing and later found in Mehriallahyari's unit, there was substantial evidence Mehriallahyari entered L.O.'s storage unit.

Substantial evidence also existed as to Mehriallahyari's intent to commit larceny when he entered L.O.'s storage unit as he not only so entered Y.W.'s storage unit, but also that of K.H. and R.C. as well. The record shows, a few days before L.O.'s and Y.W.'s storage units were burglarized, around 7:00 a.m., K.H.'s storage unit a few doors down from them had been kicked in and a bike taken from the unit. That bike was later found in Mehriallahyari's storage unit. Video surveillance showed Mehriallahyari at the facility at the time K.H.'s storage was broken into, walking outside the facility between 6:00 a.m. and 7:00 a.m. Moreover, earlier that year, Mehriallahyari was observed outside a different storage facility loading a unique assortment of items into an SUV similar to those reported missing from R.C.'s storage unit.[5]

That there was evidence of imperfections in the security systems at both storage facilities, as pointed out in the opening brief, does not render the evidence in our record insufficient to support the jury's finding Mehriallahyari entered L.O.'s storage unit with the intent to commit larceny or theft. We find no error.

---

[5] Mehriallahyari does not challenge his convictions for burglarizing the storage units of R.C., K.H., or Y.W., charged in the third amended information as counts 1, 5, and 7 respectively.

## DISPOSITION

The judgment is affirmed.

MOTOIKE, ACTING P. J.

WE CONCUR:

SANCHEZ, J.

SCOTT, J.

10